UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

LYUBOV MALOFEY,

                Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.

No. CV 04-676-MO

OPINION AND ORDER

**MOSMAN, J.,**

      Plaintiff Lyubov Malofey seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Malofey's protective application for Disability Insurance Benefits (DIB) and found her ineligible for Supplemental Security Income (SSI) payments.

      This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a review of the record, the court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**I.    Administrative history**

      Malofey filed his most recent applications for DIB and SSI on November 13, 2001. The applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on June 18, 2003. At the hearing, Malofey was not represented by an attorney. Dr. Frank McBarron and a vocational expert (VE) testified at the hearing.

The ALJ issued a decision on August 13, 2003, in which he found Malofey was not entitled to benefits. That decision became the final decision of the Commissioner on November 28, 2003, when the Appeals Council denied Malofey's request for review.

II.  Background

   A.  Malofey's testimony

Malofey has two adult sons, one of whom lives with her and is mentally disabled. Tr. 316. Ms. Malofey's husband works outside the home and performs house cleaning. Ms. Malofey does the laundry and cooking for the whole family. She also cares for her disabled son every day, but he is otherwise able to leave their house and does not require 24-hour care. Tr. 316-17.

Ms. Malofey last worked in Russia in 1998, cleaning offices two hours a day, five days a week. Tr. 318. She testified that she could not work more than that because she suffered from high blood pressure and depression. She obtained psychiatric care in the United States and was in treatment and on medication at the time of the hearing. Tr. 320.

Ms. Malofey testified that she could not return to janitorial work because she had arthritis, a "tumor" on the left side of her lower back, high blood pressure, social fear and depression. Tr. 321.

   B.  Medical Evidence

Ms. Malofey suffers from back problems. A December 14, 2001, x-ray shows Malofey had "[g]rade 1 L5-S1 spondylolisthesis with moderate L5-S1 degenerative disc disease" and "very mild multilevel degenerative disc disease." Tr. 174. In addition, a Feburary 4, 2002, note from Ms. Malofey's treating physician notes a painful "[left] flank area soft tissue mass."

Tr. 148. Records submitted after the hearing show Ms. Malofey regularly sought treatment for the tissue mass, which caused her considerable pain. Tr. 199, 207, 209, 215, 217-218. At the hearing, the medical expert testified that he could find no evidence of the "tumor" of which Ms. Malofey complained. However, the medical expert stated "I think I know what it is" but did not wish to speculate.

Ms. Malofey also reported experiencing chest pain on multiple occasions. Tr. 135, 140, 217. A November 9, 2001, thallium stress test was "worrisome for left main coronary artery disease," but a subsequent test on January 7, 2002 did not reveal any significant epicardial disease.

Ms. Malofey has been diagnosed with "major depressive disorder," a condition for which she has sought treatment and been prescribed medication. Tr. 288. Ms. Malofey's mental health providers have consistently assessed her with Global Assessment of Functioning scores between 51 and 60, indicating "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual IV-TR at 34 (4th ed. 2000). Tr. 284-85, 288, 290-301, 309.

The medical records further reveal that Ms. Malofey suffers from hypertension and high blood pressure. Early treatment records show the condition was difficult to control, but usually because Ms. Malofey had not taken her medication. *See, e.g.*, Tr. 199, 205, 208, 210. Later records show more consistent medication use and better control of the condition. Tr. 212, 217-218, 220.

Finally, the medical records show Ms. Malofey often complained of headaches to her

treating physicians.

**III.    Standards**

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. § 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(d). The criteria for the listed impairments, known as

Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e).

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e), (f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(f)(1).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the

Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

IV. **The ALJ's decision**

At Step One, the ALJ found Ms. Malofey had not performed any substantial gainful activity since June 2001. Tr. 28. At Steps Two and Three, the ALJ determined that Malofey's only severe impairment was hypertension, but that it neither met nor equaled the relevant Listing in the Listing of Impairments. Tr. 29. At Step Four, the ALJ assessed Ms. Malofey with the residual functional capacity (RFC) for medium work "compromised only by the lack of English language skills." Tr. 31. Based on his RFC and with the assistance of VE testimony, the ALJ found Ms. Malofey could perform her past relevant work or, in the alternative, could do other jobs that exist in substantial numbers in the economy. Tr. 31-32.

V. **Analysis**

Ms. Malofey contends the ALJ erred by: (1) improperly dismissing some of Malofey's impairments as non-severe; (2) improperly rejecting Ms. Malofey's testimony; and (3) performing a deficient analysis at Steps Four and Five based on his misstatement of and failure to develop the record. The Commissioner contends the ALJ's decision was supported by substantial evidence and free from legal error.

A. **The ALJ improperly rejected some of Malofey's claimed impairments**

Ms. Malofey contends the ALJ erred at Step Two of the sequential analysis when he found that Malofey's only severe impairment was hypertension. Ms. Malofey argues the record supports her claims that she suffers from severe impairments of degenerative disc disease,

anxiety, depression, a painful soft tissue mass in her lower back, heart disease, and headaches. As set forth below, the court finds the ALJ misstated and failed to develop the record with respect to Ms. Malofey's claimed degenerative disc disease, anxiety, depression, and soft tissue mass. Accordingly, the court remands for further proceedings.

### 1. Degenerative disc disease

At the time of the hearing, the record contained a December 14, 2001, lumbar x-ray showing "[g]rade 1 L5-S1 spondylolisthesis with *moderate* L5-S1 degenerative disc disease" and "very mild multilevel degenerative disc disease." Tr. 174. However, the ALJ stated that the x-ray showed Malofey had "only very mild multilevel degenerative disc disease." The Commissioner argues that the ALJ's determination was based on the testimony of the medical expert, who stated that the condition was common and should not be limiting. Tr. 329. However, the ALJ's decision expressly relies on the finding that the radiological evaluation Ms. Malofey received from Multnomah County Health Department showed "only very mild multilevel degenerative disc disease," which is clearly incorrect. Tr. 29.

Although the ALJ need not discuss all evidence presented to him, he must explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984) (*quoting Cotter v. Harris*, 642 F2d 700, 706 (3d Cir. 1981)). In this case, because the ALJ misstated the medical evidence, the court cannot determine that the ALJ gave this evidence due consideration and rejected it.

### 2. Anxiety & depression

The ALJ determined Ms. Malofey had no severe mental impairment because "there is no evidence of treatment or the prescription of antidepressant medication." Tr. 29. However,

Ms. Malofey testified at the hearing that she was both receiving mental health treatment and taking psychiatric medications. Tr. 320. The ALJ specifically took note of Ms. Malofey's mental health caregiver, but did not pursue the matter further.

As stated above, the Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841 (9th Cir. 1991). This duty is heightened where, as here, the claimant was unrepresented at the hearing. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). When important medical evidence is incomplete, the ALJ has a duty to contact the medical provider for more information. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The court therefore finds the ALJ failed to develop the record regarding Ms. Malofey's claimed mental impairments.

### 3. Back "tumor"

Ms. Malofey testified at the hearing that she suffered from a "tumor" in her lower back. At the hearing, the ALJ stated he found no evidence of such a tumor. The medical expert likewise testified that he could find no evidence of the "tumor" of which Ms. Malofey complained. However, the medical expert stated "I think I know what it is" but did not wish to speculate. The ALJ's decision makes no mention of the claimed tumor.

Ms. Malofey testified that she had sought treatment for her "tumor" and had been advised to get surgery for it. Tr. 321, 323-324. She also submitted a medical record indicating she suffered from a "soft tissue mass" in her lower back that caused her pain. Tr. 148. Documents Ms. Malofey submitted to the Appeals Council further reveal Ms. Malofey's ongoing struggle with this impairment. Tr. 199, 207, 209, 215, 217-218. However, the ALJ failed to develop the record regarding this claimed impairment.

### 4. Heart disease

The ALJ specifically relied on the testimony of the medical expert, as well as medical evidence in the record, to the effect that Malofey does not have cardiac disease. Tr. 29, 30. Ms. Malofey points to a December 13, 2001 document indicating that testing at OHSU produced "worrisome" findings. Tr. 140. However, subsequent tests showed no significant epicardial disease, and placed Malofey "in a very good prognostic bracket." Tr. 135. In any event, the ALJ's decision is supported by substantial evidence, and therefore should not be disturbed. 42 U.S.C. § 405(g).

     5.    **Headaches**

The ALJ found that "the record does not contain any information regarding headaches or any history of treatment." Ms. Malofey contests this finding, pointing to medical records showing she repeatedly complained of headaches to her doctors. Tr. 150, 212, 217, 218, 220. However, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (internal quotation omitted). Ms. Malofey identifies no record of any such underlying impairment. The ALJ did not err in finding an absence of medical evidence in the record to support a claim of disability.

    B.    **The ALJ improperly rejected Ms. Malofey's testimony**

Ms. Malofey contends the ALJ erroneously rejected Ms. Malofey's testimony about her symptoms and limitations because of his misstatement of the medical evidence and failures to develop the record.

The Ninth Circuit set out a threshold test in *Cotton v. Bowen* to assist the ALJ in deciding

PAGE 9 - OPINION AND ORDER

whether to accept a claimant's subjective symptom testimony. 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). *See also Cotton*, 799 F.2d at 1407-08.

The *Cotton* test imposes two requirements: (1) the claimant must produce objective medical evidence of an impairment or impairments and (2) he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. The claimant need not produce objective medical evidence of the symptoms or their severity. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). *See also Bunnell*, 947 F.2d at 347-48.

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: the claimant's daily activities; the location, duration, frequency, and intensity of his symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Smolen*, 80 F.3d at 1284. *See also* 20 C.F.R. § 404.1529(c)(3). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. To determine whether subjective testimony is credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

PAGE 10 - OPINION AND ORDER

Id. (citations omitted).

Accordingly, if the claimant has met the burden of showing his impairment or combination of impairments could reasonably be expected to produce some degree of the symptoms described by him and there is no affirmative evidence to suggest the claimant is malingering, the ALJ may reject testimony regarding the severity of the claimant's symptoms only by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). *See also Smolen*, 80 F.3d at 1283. In addition, Social Security Ruling 96-7 provides an ALJ must consider the entire record and several specific factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

In the instant case, the ALJ rejected Ms. Malofey's testimony because he determined that "[t]he allegations of the claimant regarding alleged disability are not supported by either objective medical findings or her own activities." However, the ALJ's reliance upon the objective medical findings is problematic because of the aforementioned misstatement of the evidence and failures to develop the record. Because the ALJ's conclusion is based on a misconstrued and underdeveloped record, the reasons the ALJ gave for rejecting Ms. Malofey's testimony are not clear and convincing.

### C. ALJ's Steps Four and Five findings

Because the ALJ failed to develop the record and misunderstood some of the medical evidence, the vocational hypothetical he posed to the vocational expert may have omitted

PAGE 11 - OPINION AND ORDER

limitations which Ms. Malofey was entitled to have included. VE testimony based on such a deficient hypothetical has no evidentiary value and reliance on such testimony is error.

## VI. Conclusion

Significant issues remain to be determined. Accordingly, the court remands this case to the ALJ to further develop the record and to consider, in light of all the evidence, whether Ms. Malofey's suffers from a severe impairment related to spondylolisthesis, the soft tissue mass in her lower back, and/or her depression and anxiety. The ALJ should further reassess Ms. Malofey's testimony and the hypothetical it posed to the vocational expert. For these reasons, the court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this   8th   day of September, 2005.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge